IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

UNITED STATES OF AMERICA

     v.                         CRIMINAL NO.: WDQ-11-0187

JAMES HARRIS

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM OPINION

On March 31, 2011, James Harris was charged with possession
with intent to distribute cocaine and aiding and abetting in
violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. For the
following reasons, Harris's motions to dismiss and in limine to
exclude hearsay, expert testimony, and gun evidence were denied,
and the Government's motion to exclude cross-examination based
on disciplinary records was granted.

I.  Background

On September 17, 2008, Trabien Smith, an undercover Baltimore
police officer, approached Harris, Gordon Gingles, Marquita Cook,
and others standing near a Baltimore residence (the "House").
ECF No. 27 at 2; ECF No. 48 at 1-2. Ashley Sparo was inside.[1]
Harris was on probation at the time. See ECF No. 23 at 2. Gingles
asked Smith, "What do you need?" or words to that effect. ECF

_____

[1] Harris provided this information for the first time on June 6,
2011.

No. 48 at 1, 7. Smith replied, "ready," a street term for crack cocaine. *Id.* at 1. Gingles told Smith to "go see that man," or words to that effect, indicating Harris. *Id.* Harris asked Smith what he needed, and Smith replied, "two." *Id.* at 2. Harris told Smith to wait around a nearby corner, and told Cook to "get him two." *Id.* Cook retrieved two vials of crack cocaine from the House. *Id.* She gave them to Smith, who paid her $20 in pre-marked bills. *Id.*

Based on Smith's information, other officers arrived and arrested Harris, Gingles, and Cook. *See id.* at 3. Later, officers obtained a search warrant for the House and found additional cocaine and packaging materials. ECF No. 48 at 2. They also found an individual nicknamed "Ray"[2] lying on a couch; a handgun was found under the couch cushion. ECF No. 46 at 2. Ray was released immediately. *Id.* Harris is not a listed resident of the House. *Id.* Nothing found in the House connects Harris to it. *Id.*

In September 2008, Harris was charged in the District Court of Maryland for Baltimore City and the Circuit Court for Baltimore City for state narcotics and firearms violations. ECF No. 27 at 3; ECF No. 23 at 2. He was detained for seven months pending trial before the case was placed on the stet docket. *Id.* After

---

[2] Harris provided this name for the first time on June 6, 2011, and noted that Ray had died in 2010.

2

his case was put on that docket, Harris was found to have violated his probation because of the September 17, 2008 arrest, and his term was extended another year. *Id.* When the additional year was about to expire, the State's Attorney's Office re-opened the stetted case for prosecution. *Id.* The parties agree that the case was re-opened on March 1, 2010. Harris has continuously requested a trial, and state prosecutors received "several" postponements. *Id.* When the Circuit Court for Baltimore City denied the request for another postponement, the charges were dismissed *Nolle Prosequi*. *Id.*

After this dismissal, Harris asserts that "prosecutors again sought to violate [his] probation for [the September 17, 2008] incident," which he opposed on collateral estoppel grounds. *Id.* The State's Attorney's Office referred the case to the federal Government (the "Government"), and the Bureau of Alcohol, Tobacco, Firearms, and Explosives (the "ATF") undertook a review for federal prosecution. *Id.*; ECF No. 27 at 3.

On February 1, 2011, an ATF Task Force Officer filed a criminal complaint in this Court against Harris for the 2008 conspiracy to distribute cocaine. ECF No. 1. On March 31, 2011, after unsuccessful plea negotiations, Harris was indicted for possession with intent to distribute cocaine and aiding and abetting in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. §

3

2. ECF No. 16; ECF No. 27 at 3.[3]

On April 8, 2011, Harris was arraigned and pled not guilty. ECF No. 18. On May 4, 2011, Harris moved to dismiss the indictment. ECF No. 23.

On May 10, 2011, the indictment was superseded to charge Harris with conspiracy to distribute cocaine and possession with intent to distribute cocaine in violation of 21 U.S.C. § 846. ECF No. 24.

On May 12, 2011, the Government opposed Harris's motion to dismiss the indictment. ECF No. 27. On May 20, 2011, Harris was arraigned, and pled not guilty to the superseding indictment.

In May or June 2011, Harris subpoenaed disciplinary records related to the Baltimore City police officers involved in the investigation of this case. The records were delivered on June 1 and were reviewed *in camera* on that and the following days. On June 3, defense counsel reviewed the disciplinary files for all the officers whose charges were sustained and summaries of all the charges against all the officers involving the investigation and arrest.

On June 3, 2011, the Government moved to prevent the use of these records to impeach the Baltimore City police witnesses.

---

[3] On April 25, 2011, Harris moved to suppress statements and certain evidence. ECF Nos. 19-20. On June 6, 2011, the parties agreed that these motions were moot; they were denied. Harris's motion for leave to file additional motions, ECF No. 21, was granted.

ECF No. 44. That day, Harris also moved in limine to exclude hearsay, gun evidence, and expert testimony. ECF Nos. 45-47. On June 5, 2011, the Government opposed those motions. ECF No. 48. Trial began June 6, 2011. A motions hearing began that day.

II. Harris's Motion to Dismiss the Indictment

Harris moves to dismiss the indictment for prejudicial delay[4] and vindictive prosecution. ECF No. 23 at 2-3. The Government has opposed the motion. ECF No. 27 at 2.

A. Sixth Amendment Right to a Speedy Trial

The Sixth Amendment guarantees a defendant a speedy trial. This constitutional right is triggered when a defendant is "indicted, arrested, or otherwise officially accused." *United States v. MacDonald*, 456 U.S. 1, 6 (1982).

In determining whether the Sixth Amendment right to a speedy trial has been violated, a court considers (1) the length of the delay, (2) reason for the delay, (3) the defendant's assertion of his right, and (4) prejudice to the defendant. *Barker v. Wingo*, 407 U.S. 514, 530 (1972). Generally, if the delay is less than one year, the other factors need not be examined. *United States v. Hall*, 551 F.3d 257, 271 (4th Cir.

---

[4] Harris moves pursuant to Fed. R. Crim. P. 48(b), under which a court may dismiss an indictment if unnecessary delays occurs in: "(1) presenting a charge to a grand jury; (2) filing an information against a defendant; or (3) bringing a defendant to trial." Prejudicial delay will be discussed under the Sixth Amendment speedy trial clause and the Fifth Amendment due process clause.

2009).  The defendant must establish that "on balance, [the

factors] weigh in his favor."  *United States v. Thomas*, 55 F.3d

144, 148 (4th Cir. 1995).

    1. Length of the Delay

    Harris asserts that the Government delayed this case 29

months--the time between his September 17, 2008 state arrest and

the February 1, 2011 federal criminal complaint.  *See* ECF No. 23

at 2.

    The initiation of federal charges triggers the Sixth Amendment

protections; a previous state arrest does not trigger constitu-

tional speedy trial protections for a later federal charge.[5]

Although Harris was arrested on state charges in September 2008,

the federal charge was initiated by the February 1, 2011 federal

criminal complaint.  *See* ECF No. 1.  Harris was indicted on

March 31, 2011, ECF No. 16,[6] and trial began on June 6, 2011.

Thus, Harris's trial began just over four months after the

Government initiated the prosecution.  Because the length of the

---

[5] *MacDonald*, 456 U.S. at 10 n.11 ("[A]n arrest or indictment by
one sovereign would not cause the speedy trial guarantees to
become engaged as to possible subsequent indictments by another
sovereign."); *United States v. Garner*, 32 F.3d 1305, 1308-09
(8th Cir. 1994) (defendant's arrest on state charges did not
trigger Sixth Amendment speedy trial protections); *Cross v.
United States*, No. 2:06CV457, 2007 WL 128964, at *8 (E.D. Va.
Jan. 12, 2007) (same).

[6] On May 10, 2011, Harris was charged by superseding indictment.
ECF No. 24.

delay is less than one year, this factor weighs against a constitutional speedy trial violation, and the other factors generally need not be examined. *See Hall*, 551 F.3d at 271.[7] However, they will be discussed below.

2. Reason for the Delay

The reasons for a trial delay should be characterized as "valid, improper, or neutral." *Id.* at 272 (*citing United States v. Grimmond*, 137 F.3d 823, 828 (4th Cir. 1998)). The Government asserts that the four-month period between the February 1, 2011 criminal complaint and the June 6 beginning of trial includes providing discovery, filing and briefing motions, preparing for trial, and engaging in plea negotiations. ECF No. 27 at 7. Harris has not contravened these valid and/or neutral reasons, and there is no indication that the Government improperly delayed trial. Thus, the four-month period does not offend the Sixth Amendment.[8]

3. Assertion of Speedy Trial Right

A defendant's assertion of his speedy trial right is "entitled to strong evidentiary weight in determining whether [he] is

_____

[7] To the extent that Harris asserts the Court should also calculate the delay starting from March 1, 2010--when the State's Attorney's Office re-opened his case--this date is also within one year of the February 1, 2011 federal complaint.

[8] As the Government notes, the June 6, 2011 trial was scheduled within 70 days of the March 31, 2011 indictment, the time frame contemplated by the Speedy Trial Act. 18 U.S.C. § 3161(c)(1).

being deprived of the right." *Barker*, 407 U.S. at 531-32. The Government concedes that Harris has asserted this right by moving to dismiss the indictment, but notes that this is the only favorable factor. ECF No. 27 at 8.

    4. Prejudice to the Defendant

    Prejudice "should be assessed in the light of the interests . . . the speedy trial right was designed to protect." *Grimmond*, 137 F.3d at 829 (*quoting Barker*, 407 U.S. at 532). These interests include preventing oppressive pretrial incarceration, minimizing the defendant's anxiety and concern, and limiting the possibility of an impaired defense. *Id.* An impaired defense may result when witnesses become unavailable or unable to accurately recall past events, exculpatory evidence has been lost, or evidence becomes unavailable because of the delay. *Id.* at 830.

    Harris has not argued that he experienced oppressive pretrial incarceration. He also "never expressed any anxiety or concern about the federal charges."[9] However, Harris asserts that his defense has been impaired. *See* ECF No. 23 at 1, 3. He argues that he has been prejudiced by the unavailability of "key" witnesses, and that "during [the] extended delay, at least

---

[9] *Grimmond*, 137 F.3d at 830; *see also United States v. Goodson*, 204 F.3d 508, 516 (4th Cir. 2000) ("[P]rejudice from anxiety requires more than the normal anxiety that accompanies a trial." (*quoting United States v. Shepherd*, 511 F.2d 119, 123 (5th Cir. 1975))).

8

one witness [Ray] has died, one is incarcerated on unrelated charges, and others have disappeared." *Id.* Because Harris's speedy trial right was not triggered until the February 1, 2011 federal criminal complaint, the Court's prejudice analysis examines only the four-month period between the federal charges and federal trial.[10] Prejudice examines those witnesses who became unavailable during that period.[11]

At the June 6, 2011 motions hearing, Harris announced that Ray had died in 2010. As the Government notes, "the delay *since* February 2011 is not the cause of [Ray's] unavailability." ECF No. 27 at 8. Harris also noted that Sparo, another witness, became unavailable in mid-May 2011. But there is no indication that she became unavailable "as a result of the delay." *Grimmond*, 137 F.3d at 830.[12]

Harris has not argued that the delay resulted in unavailable evidence or loss of exculpatory evidence. Thus, Harris's assertions of an impaired defense are insufficient.

Accordingly, because only one factor--assertion of his

---

[10] Harris's assertion of prejudicial delay from his September 2008 state arrest to the March 31, 2011 indictment will be discussed in Part II.B (pre-indictment delay under the Fifth Amendment due process clause).

[11] *See, e.g.*, *Grimmond*, 137 F.3d at 826, 830 (analyzing whether the defendant was prejudiced by any delay after his *federal* indictment).

[12] Sparo's expected testimony will be discussed in Part II.B.1.

speedy trial right--favors Harris, his Sixth Amendment right to a speedy trial has not been violated. *See Thomas*, 55 F.3d at 148.

B. Pre-Indictment Delay Under the Fifth Amendment Due Process Clause

Harris also moves to dismiss the indictment on "due process grounds." ECF No. 23 at 3. Under the Fifth Amendment due process clause, an indictment must be dismissed if the pre-indictment delay "caused substantial prejudice, [and] was an intentional device to gain tactical advantage over the accused." *United States v. Marion*, 404 U.S. 307, 324 (1971).

The Fourth Circuit uses a two-part test in determining whether pre-indictment delay warrants dismissal. First, the defendant must prove "actual" prejudice. *United States v. Automated Med. Labs., Inc.*, 770 F.2d 399, 403 (4th Cir. 1985). If that threshold requirement is met, the Court balances the prejudice to the defendant with the Government's justification for the delay. *Id.* at 403-04; *Howell v. Barker*, 904 F.2d 889, 895 (4th Cir. 1990). The question then becomes whether the Government's delay in prosecution "violates fundamental concept-tions of justice or the community's sense of fair play and decency." *Automated Med. Labs.*, 770 F.2d at 404 (*quoting United States v. Lovasco*, 431 U.S. 783, 790 (1977)).

1. Actual Prejudice

As noted above, Harris asserts that he has been prejudiced

10

because "key" witnesses are unavailable: Sparo; Ray; one uniden-
tified witness "incarcerated on unrelated charges"; and other
unidentified witnesses who have "disappeared." *See* ECF No. 23 at
1, 3.

To demonstrate actual prejudice, the defendant must show
that "he was meaningfully impaired in his ability to defend . .
. to such an extent that the disposition of the criminal proceed-
ing was likely affected." *Jones v. Angelone*, 94 F.3d 900, 907
(4th Cir. 1996). When the claimed prejudice is unavailability
of witnesses, the defendant must:

(1) identify the witness he would have called;
(2) demonstrate, with specificity, the expected content of
    that witness'[s] testimony;
(3) establish to the [C]ourt's satisfaction that he has made
    serious attempts to locate the witness; and
(4) show that the information the witness would have provided
    was not available from other sources.

*Id.*

According to Harris, Sparo would have testified that she
did not see Harris on September 17, 2008; he was not in the
House that day and did not get arrested inside; and did not
store drugs there.[13] However, the Government asserted at the
motions hearing that it did not intend to prove that Harris was
in the House on September 17, 2008, but that Cook retrieved the
drugs there. There is "no showing that [if Sparo were available,

_____

[13] Sparo previously provided this information to the defense.

11

she] would have . . . testified at the trial." *Automated Med.*
*Labs.*, 770 F.2d at 404.

Harris asserts that Ray could have testified about the
"diagram" of the House. However, photographs or floor plans
could also provide the House's layout. Also, because Ray was
never interviewed in connection with this case, any other
testimony by him remains "highly speculative." *Id.*

Harris has not identified the other witnesses he would have
called. He has not "told the [C]ourt what he *expected* these
witnesses to have known."[14] Further, there is no indication that
Harris has attempted to find the witnesses who have "disappeared."
Also, he has not shown that the information these witnesses
would have provided is not otherwise available. Thus, Harris
has not demonstrated actual prejudice.

2. Reason for the Delay

Even assuming that Harris has been prejudiced, the reason
for any delay was justified. The Government has consistently
asserted--and Harris has not shown otherwise--that it did not
know about Harris's state charges until the State's Attorney's

---

[14] *Jones*, 94 F.3d at 909 (emphasis in original); *see, e.g.*, *United
States v. McKoy*, 129 F. App'x 815, 817, 819 (4th Cir. 2005)
(district court properly denied motion to dismiss indictment by
defendant who argued that the pre-indictment delay caused him to
lose the benefit of an unavailable witness's testimony; the
defendant failed to show "how [the witness's] testimony would
have aided his defense" (*citing Jones*, 94 F.3d at 908)).

12

Office referred this case. ECF No. 27 at 11. After the referral, the Government initiated an investigation, reviewed the case, and charged Harris by criminal complaint on February 1, 2011; indictment followed on March 31, 2011. *Id*. Thus, it does not "appear[] that the delay was . . . a desire to harass or gain tactical advantage" over Harris,[15] and there is no indication that the delay was unjust or violated fair play and decency. *Automated Med. Labs.*, 770 F.2d at 404.

Thus, dismissal of the indictment is not warranted under the Fifth Amendment due process clause.

C. Vindictive Prosecution

Harris also moves to dismiss the indictment under the Fifth and/or Fourteenth Amendment due process clause by asserting that the procedural history of this case "suggest[s] forum shopping at best, and vindictive prosecution at worst." ECF No. 23 at 1, 3. Harris argues that after his state charges were dismissed: state prosecutors sought to violate Harris's probation; he asserted collateral estoppel; and the State's Attorney's Office then enlisted the Government in "acknowledg[ment of] and perhaps

---

[15] *United States v. Wherry*, No. 4:06CR00026-001, 2006 WL 3007348, at *1-*2 (W.D. Va. Oct. 20, 2006) (denying defendant's "motion to dismiss due to pre-accusatory delay"; the Government's legitimate delay arose from the fact that the case had been investigated by a federal agency before being "referred to the U.S. Attorney, which conducted its own investigation and scheduled a grand jury").

in retribution for [its] defeat." *Id.* at 2.[16]

The Government asserts that it pursued a prosecution because it received the referral, determined that Harris had committed a federal drug crime, and learned that he has a "lengthy criminal history and was under parole/probation supervision when he committed the offense." ECF No. 27 at 14.

To establish prosecutorial vindictiveness, a defendant must overcome the "presumption of prosecutorial regularity," and objectively show that "(1) the prosecutor acted with genuine animus toward the defendant[,] and (2) the defendant would not have been prosecuted but for that animus." *United States v. Wilson*, 262 F.3d 305, 314 (4th Cir. 2001).[17] Courts must be careful "not to intrude unduly in the broad discretion given to prosecutors in making charging decisions," which are presumptively lawful. *Id.* at 315.

---

[16] At the motions hearing, Harris suggested that the State's Attorney's Office might have re-opened the case on March 1, 2010 solely to involve the Government. He cited *United States v. Woolfolk*, which provides that the Speedy Trial Act is triggered when "the Government knew or should have known that the defendant was restrained [by state authorities] solely to answer federal charges." 399 F.3d 590, 596 (4th Cir. 2005). There is no evidence that Harris was held by the State simply to await the Government's prosecution.

[17] For an example of prosecutorial vindictiveness, *see Blackledge v. Perry*, 417 U.S. 21, 22-23, 28-29 (1974) (after the defendant filed an appeal of conviction, but before receiving a new trial, the local prosecutor obtained an indictment charging him with a more serious crime covering the same conduct that was the subject of the conviction).

Harris has not asserted and there is no indication that the Government has animus against him. Further, his conclusionary accusation that the State's Attorney's Office was motivated by bad faith when referring the case is unsupported.[18] Thus, Harris has not established prosecutorial vindictiveness by the Government or the State's Attorney's Office.

Accordingly, Harris's motion to dismiss the indictment was denied.

III. The Government's Motion to Exclude Cross-Examination Based on Disciplinary Records

Harris seeks to attack the credibility of Smith and two other Baltimore City police officers involved in the case by cross-examining them based on disciplinary records. For example, one administrative complaint, which was handled by command, alleged that Smith told an arrestee, "If you weren't with [another arrestee], you wouldn't have [been] locked up." Harris argues that this shows Smith's "proclivity" for making assessments of guilt by association.

---

[18] *See, e.g., United States v. Houston*, 40 F. App'x 836, 838-39 (4th Cir. 2002) (rejecting defendant's vindictive prosecution claim that state officers encouraged the federal government to prosecute him after his state charges were dismissed; such "speculat[ion]" and "conclus[ionary] allegations" were insufficient).

The Government "wish[es] to emphasize that it does not believe, and has seen no evidence of, any vindictive intent on the part of the State." ECF No. 27 at 13 n.4.

Another complaint accused an officer of including facts in a warrant that were not true; this allegation was not sustained because "the complainant could not explain how she knew the facts were not true." Another complaint, which was administratively closed, accused an officer of planting marked cash on an arrestee. The remaining complaints--most of which were administratively closed, unfounded, or not sustained--involve allegations of excessive force and violations of departmental regulations. Harris argues that the records show that the officers were willing to act outside authority, which impeaches their credibility.

In moving to exclude cross-examination based on these records, the Government asserts that none of the instances of misconduct relates to truthfulness. ECF No. 44 at 1.

Under Fed. R. Evid. 608(b):

> Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness'[s] character for truthfulness, other than conviction of crime as provided in rule 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning the witness'[s] character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified.

Thus, a disciplinary record that is the basis of cross-examination must focus on the officer's truthfulness. Misconduct that is probative of truthfulness includes "perjury, fraud,

swindling, forgery, bribery, and embezzlement." *United States v. Leake*, 642 F.2d 715, 718 (4th Cir. 1981).

Although some of the records contain sustained findings of, for example, excessive force, none includes findings of misconduct based on untruthfulness.[19] To the extent that dishonesty could be *inferred* from some of the allegations, mere accusations of misconduct, rather than findings, can be problematic because the trial might be "sidetracked by a mini-trial on [those] allegations." *United States v. Custis*, 988 F.2d 1355, 1359 & n.1 (4th Cir. 1993) (*citing* Fed. R. Evid. 403; Fed. R. Evid. 608(b)). Mere allegations may be probative of credibility if they establish a "pattern of fraudulent activity,"[20] which these records do not show. Further, Harris's attempt to use some instances of misconduct to show an officer's proclivity or character for acting unlawfully is prohibited. Fed. R. Evid. 404(a) ("Evidence of a person's character or a trait of character is not admissible for the purpose of proving action in conformity therewith[.]").

---

[19] *Compare Phillips v. Irvin*, No. 05-0131-WS-M, 2007 WL 2310038, at *4 n.7 (S.D. Ala. 2007) (disciplinary report in which an officer's supervisors stated that he had been "less than truthful in discussing certain disciplinary matters" could be used under Rule 608(b)), *with United States v. Seymour*, 472 F.3d 969, 970 (7th Cir. 2007) (that an officer uses "excessive force [is] not probative of his truthfulness" under Rule 608(b)).

[20] *Leake*, 642 F.2d at 719 (witness's indictment for obtaining money under false pretenses, arrest warrant for defrauding an innkeeper, and default judgments seeking repayments of loans "placed [his] credibility in question").

Accordingly, the Government's motion to exclude cross-examination based on disciplinary records was granted.

IV.  Harris's Motion in Limine to Preclude the Government from Eliciting Hearsay Testimony

Harris seeks to prevent the Government from calling Officer Smith to testify that: Gingles asked Smith, "What do you need?" or words to that effect, and told Smith to "go see that man," or words to that effect, indicating Harris. *See* ECF No. 45 at 2.

Generally, a "statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted" is inadmissible as hearsay. Fed. R. Evid. 801(c). A "statement" is an assertion. Fed. R. Evid. 801(a). "[N]othing is an assertion unless intended to be one." Fed. R. Evid. 801(a) advisory committee's note.

Questions and commands are not hearsay because they are not assertive speech--unless there is some indication that they are code for something else. *United States v. Rodriguez-Lopez*, 565 F.3d 312, 314-15 (6th Cir. 2009); *United States v. Sinclair*, 301 F. App'x 251, 253 (4th Cir. 2008). Thus, Gingles's question ("What do you need[?]") and command ("Go see that man") are not assertive speech or hearsay. *See, e.g.*, *Rodriguez-Lopez*, 565 F.3d at 314 ("I want some heroine," "Can I get some heroin?" and "Bring me some heroin" would not be hearsay).

Further, assuming that they were assertive speech, a statement

18

by a party's co-conspirator is not hearsay if made during the course, and in furtherance, of a conspiracy. Fed. R. Evid. 801(d)(2)(E). To admit Gingles's statements as non-hearsay, the Court must conclude by a preponderance of the evidence that: (1) there was a conspiracy involving Gingles and Harris; and (2) the statements were made (a) during the course of and (b) in furtherance of the conspiracy. Fed. R. Evid. 104; *Bourjaily v. United States*, 483 U.S. 171, 175 (1987); *United States v. Blevins*, 960 F.2d 1252, 1255 (4th Cir. 1992). The disputed hearsay statement may be considered in determining the existence of a conspiracy, but is itself insufficient. Fed. R. Evid. 801(d)(2)(E); *United States v. Dockins*, 659 F.2d 15, 16 (4th Cir. 1981).

It appears that there will be sufficient evidence to support a finding, by a preponderance, that Gingles and Harris were involved in a conspiracy because: they were on the same block, and Gingles could and did direct Smith to Harris; Harris took Smith's order for "two" and told Cook to "get him two"; and Cook promptly provided two vials of cocaine to Smith. ECF No. 48 at 1-2; *United States v. Burgos*, 94 F.3d 849, 859 (4th Cir. 1996) (a conspiracy can be proved by context and circumstantial evidence). The statements were apparently during the course of the conspiracy because they directed Smith to Harris, and the cocaine sale occurred soon after. The statements apparently

19

were made in furtherance of the conspiracy because they were "intended to promote the conspiracy's objectives," *United States v. Shores*, 33 F.3d 438, 443 (4th Cir.1994); Gingles's statements meant to lead Smith to Harris, who would direct the remaining steps of the buy. Thus, if the evidence at trial is consistent with the parties' expectations, Gingles's "statements" would be admissible as statements by a co-conspirator.

Accordingly, Harris's motion in limine to exclude hearsay was denied.

V. Harris's Motion in Limine to Exclude Expert Testimony

Harris moves to exclude the testimony of Special Agent Doug Ellington of the Drug Enforcement Administration. ECF No. 47 at 2. The Government notified Harris that it intends for Ellington to testify

> concerning the differences between crack cocaine and powder cocaine; the manner in which various drugs are packaged and stored and prepared for distribution; the amounts of money charge[d] for various quantities of narcotics; the smallest quantities at which cocaine and crack cocaine may be distributed, specifically that crack cocaine may be distributed in quantities as small as one tenth of a gram; the meaning of terms such as "ready"; the use of stash houses as a means of storing and protecting drugs; the use of firearms as a means of protecting drugs and drug money; and the manner in which multi-person drug "shops" may operate, including the use of multiple participants such as one who makes deals, one who handles drugs and money, and other roles.

*Id.*

Harris asserts that this testimony is intended to "characterize the evidence [the Government hopes] to produce at trial

20

as proof of a drug operation, with the stamp of approval from a supposed expert." *Id.* at 3. At the motions hearing, Harris expressed concern that although Ellington proposes to testify in this case that drug operations use participants who have individualized duties, he has testified in other cases that one member of an operation has multiple duties.

Under Fed. R. Evid. 702:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Government agents and police officers may testify as experts about the drug trade, which includes opining on the distribution and prices of drugs, tools of the drug trade, drug transport, and the meaning of drug-related code words. *United States v. Wilson*, 484 F.3d 267, 275 (4th Cir. 2007); *United States v. Ferguson*, 172 F. App'x 539, 542 (4th Cir. 2006); *United States v. Gastiaburo*, 16 F.3d 582, 589 (4th Cir. 1994). "Jurors are not well versed in the behavior of drug dealers." *Id.* (citation and internal quotation marks omitted).

The Government notes that Ellington is an "experienced narcotics investigator who has participated in and supervised many drug investigations, including those involving controlled

21

purchases." ECF No. 48 at 5; *see United States v. Hopkins*, 310 F.3d 145, 151 (4th Cir. 2002) (lower court properly admitted expert testimony of officer with "extensive experience and training in narcotics investigations"). The Government has also assured that Ellington will only testify generally about drug operations. If the Government elicits testimony about this specific case, Harris may request a curative instruction. Further, Harris is free to cross-examine Ellington regarding previous, inconsistent testimony about the division of labor in drug operations.

Accordingly, Harris's motion in limine to exclude expert testimony was denied.

VI. Harris's Motion in Limine to Preclude Gun Evidence

Harris seeks to prevent the Government from introducing evidence of the gun found at the House because it "lacks any evidentiary significance in the drug charges . . . and carries significant potential prejudice." ECF No. 46 at 2. The Government asserts that "the presence of a firearm inside [the House] corroborates the proposition that there was a drug conspiracy in operation on that day and that it was making use of [the House] as a stash house." ECF No. 48 at 14.

Relevant evidence may be excluded if its probative value is substantially outweighed by the risk of unfair prejudice, confusion, and delay. Fed. R. Evid. 403.

Because guns are "tools of the drug trade," evidence of "gun possession and ownership is logically relevant in many drug conspiracies." *United States v. Ward*, 171 F.3d 188, 195-96 (4th Cir. 1999).[21] Although Harris did not reside in the House and nothing inside was found related to him, evidence of the gun is probative of the drug operation to which Harris is allegedly linked. To avoid any undue prejudice, upon request the Court will give an appropriate limiting instruction that the gun is only evidence of the existence of the alleged drug operation, and there has been no evidence of any connection between Harris and the gun.

Accordingly, Harris's motion in limine to preclude gun evidence was denied.

VII. Conclusion

For the reasons stated above, Harris's motions to dismiss and in limine to exclude hearsay, expert testimony, and gun evidence were denied, and the Government's motion to exclude cross-examination based on disciplinary records was granted.

6/8/11
_____
Date

_____
William D. Quarles, Jr.
United States District Judge

---

[21] *See also United States v. Collazo*, 732 F.2d 1200, 1206 (4th Cir. 1984) ("The admission of handguns into evidence in drug cases has been consistently upheld as relevant to the issues raised by such cases.").

23